UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL AZZARA,

                         Plaintiff,

-v-

UNITED STATES OF AMERICA,

                         Defendant.

No. 19-CV-8751 (KMK)
No. 02-CR-1446 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

Pro se plaintiff Paul Azzara ("Azzara") has filed a Motion for Return of Property (the "Motion") (Dkt. No. 1), pursuant to Federal Rule of Criminal Procedure 41(g), seeking the return of materials seized in connection with his arrest, trial and conviction for two counts of attempted extortion under the Hobbs Act, 18 U.S.C. § 1951, and one count of mailing a threatening communication in violation of 18 U.S.C. § 876(d).[1] (*See* Motion.)[2] For the reasons set forth below, the Motion is denied.

I. Factual and Procedural Background

The following facts are taken from decisions of district courts in the Southern District of New York and the Middle District of Florida.

---

[1] The Government's opposition letter erroneously describes Plaintiff's § 876(d) conviction as a conviction pursuant to § 876(c). (Dkt. No. 8.) This error was likely based on what appears to be a typographical error in the Second Circuit summary order affirming Plaintiff's judgment of conviction. *See United States v. Azzara*, 132 F. App'x 923, 924–25 (2d Cir. 2005) ("[Azzara] appeals from a November 24, 2003, judgment of conviction . . . upon a jury verdict of guilty on one count of mailing a threatening communication in violation of 18 U.S.C. § 876(c) . . . ."). In light of that apparent error, this Court has reviewed Plaintiff's judgment, amended judgment and a transcript of the jury charges. All of these sources, like the district court opinion denying Plaintiff's habeas petition, *Azzara v. United States*, No. 02 CR 1446 CM, 2011 WL 5025010, at *3 (S.D.N.Y. Oct. 20, 2011), make clear that Plaintiff was convicted under § 876(d). In any case, the distinction between the two offenses is immaterial for resolving the instant Motion.

[2] Unless otherwise indicated, all references to docket entries refer to Civil Case No. 19-CV-8751.

In 1992, Plaintiff was subjected to a restraining order by a Florida state court because he was "harassing and threatening" his former girlfriend, Cynthia Hubbard ("Hubbard"), and her family. *Hubbard v. Azzara*, 01-cv-1154 (M.D. Fla.), July 3, 2001 In Camera Report and Recommendation ("*Hubbard R&R*"), (Dkt. No. 38), *adopted by* July 3, 2001Order, (Dkt. No. 39). In 1993, Plaintiff pleaded "no contest" to charges of assault and burglary after breaking into Hubbard's home. *Id.* Plaintiff was placed on probation, and as a condition of that probation, the state court instructed Plaintiff to "destroy all videotapes" of his and Ms. Hubbard's sexual encounters. *Id.* As Plaintiff later recounted to a district court, Plaintiff and his father then appeared before a state court judge and represented that they were "handing over the original videotapes pursuant to [the] probation order." *Id.*

Nevertheless, Plaintiff appears to have kept copies or the videotapes "in contravention of the probation order." *Id.* Beginning in May 2001, Plaintiff "carried out a concerted plan . . . to threaten and harass" Hubbard and her family "in an effort to obtain a large sum of money." *Azzara v. United States*, 2011 WL 5025010, at *3 (S.D.N.Y. Oct. 20, 2011) ("*Azzara II*"). In particular, Plaintiff "threatened to display the tapes on a web site" and sent faxes to Hubbard's co-workers "informing them of the existence of the web site." *Id.* In June 2001, Hubbard initiated a civil action in the Middle District of Florida, and the court permanently enjoined Plaintiff from broadcasting the videotapes. *Id.* Nevertheless, on May 20, 2002, Plaintiff again sent a letter to Hubbard's stepfather threatening to broadcast the tapes and "and offering them for sale for $3 million." *Id.*

On September 26, 2002, Plaintiff was arrested, (*See* No. 02-CR-1446; Dkt. minute entry for Sept. 26, 2002), and the still-extant videotapes were seized during a search of his home. *Azzara v. United States*, 2008 WL 4702740, at *2 (S.D.N.Y. Oct 23, 2008) ("*Azzara I*"). On

June 23, 2003, after deliberating for less than one day, a jury in the Southern District of New York returned a guilty verdict on the three counts identified above. *Azzara II*, 2011 WL 5025010, at *4. On November 24, 2003, Judge McMahon entered judgment and sentenced Plaintiff to 168 months' imprisonment, to be followed by three years of supervised release, and a $300 special assessment. *Id.* at *3. On June 6, 2005, the Second Circuit affirmed Plaintiff's conviction but remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *Id.* Plaintiff was resentenced on December 21, 2005 to the same sentence. *Id.* The Second Circuit affirmed on September 24, 2008, and the Supreme Court denied certiorari on October 13, 2009. *Id.*

While Plaintiff's appeal of his resentencing was pending before the Second Circuit, Plaintiff filed several motions, including a Motion for Return of Property. *Azzara I*, 2008 WL 4702740, at *1. That motion sought an order compelling the Government to return the videotapes seized by the police during the search of his home. *Id.* at *2. On October 23, 2008, Judge McMahon denied the request, explaining that Plaintiff "unlawfully used the video tapes as part of his scheme in the instant case to extort money from his victims," and that "[n]otwithstanding [Plantiff's] fanciful argument that copyright law entitles him to possession of the tapes, he has no right to them because they are not supposed to exist." *Id.*

On October 13, 2009, Plaintiff moved, pursuant to 18 U.S.C. § 2255, to set aside, modify or vacate his sentence pursuant. *Azzara II*. 2011 WL 5025010, at *1. Plaintiff argued, inter alia, that his trial counsel was ineffective because that counsel failed to argue that the protective order precluding him from broadcasting the videotapes was "invalid for violating his copyright in the videos." *Id.* at *7 n.4. Judge McMahon concluded that this argument was "meritless." *Id.*

Now, a decade later, Plaintiff once again seeks to assert ownership and recover these same videotapes. On September 13, 2019, Plaintiff filed the instant Motion. (*See* Motion.) On October 29, 2019, this Court directed the Government to file a response. (Dkt. No. 6.) On November 29, 2019, the Government filed a letter in opposition to Plaintiff's Motion. (Dkt. No. 8.) On January 14, 2020, Plaintiff filed a Reply. (Dkt. No. 14.)

## II. Discussion

### A. Applicable Legal Principles

#### 1. Rule 41(g)

Under Rule 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41. "The Rule recognizes that the federal courts have equitable jurisdiction to order the return of property." *Bertin v. United States*, 478 F.3d 489, 492 (2d Cir. 2007). However, Rule 41(g) "simply provides for the return of [the] seized property [itself]," and so "does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." *Id.* (citation and quotation marks omitted). To prevail on a Rule 41(g) motion," a criminal defendant must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005) (citation and quotation marks omitted).

#### 2. Res Judicata

The doctrine of res judicata bars "the subsequent litigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined." *Balderman v. US. Veterans Admin.*, 870 F.2d 57, 62 (2d Cir. 1989). Courts apply a three-prong

4

test when considering whether res judicata applies: (1) whether "the previous action involved an adjudication on the merits;" (2) whether "the previous action involved the plaintiffs or those in privity with them;" and (3) whether "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. NY City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Res judicata "prevents a party from litigating any claim which could have been raised in the previous suit, even if it was not actually raised or decided." *Toro v. Depository Trust Co.*, 97 CV 5383, 1997 WL 752729 at *3 (S.D.N.Y. Dec. 4, 1997). Thus, "claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir. 2002) (internal citations and quotation marks omitted).

### B. Application

Plaintiff's claims fail for three central reasons. First, the Motion is untimely. Second, a federal court has already decided precisely this same issue, denying the very relief that Plaintiff now seeks. Third, even were this Court to consider the issue on the merits, it would conclude that prior court orders and Plaintiff's own criminal conduct preclude any claim of right to possess the videotapes.

#### 1. Statute of Limitations

As a threshold matter, the Motion is barred by the applicable statute of limitations. As the Second Circuit has explained, because no specific statute of limitations governs motions for return of property, "the six-year catch-all statute of limitations for civil actions against the federal government is applied" to Rule 41(g) motions "made after the termination of criminal proceedings against the defendant." *Bertin*, 478 F.3d at 492; *see also Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 654 (2d Cir. 1998) (explaining that 28 U.S.C. § 2401(a), which provides a

5

default six-year statute-of-limitations for "every civil action commenced against the United States," governs motions to recover seized property). Where "there has been a related criminal proceeding but no civil forfeiture proceeding, the cause of action accrues at the end of the criminal proceeding during which the claimant could have sought the return of his property by motion, but neither sought such return nor received his property." *Bertin*, 478 F.3d at 493.

Here, Plaintiff was sentenced, and judgment was entered, on November 24, 2003. *See Azzara II*, 2011 WL 5025010, at *3. Accordingly, Plaintiff's Rule 41(g) motion "accrued on the same day." *Bertin*, 478 F.3d at 494. Thus, when Plaintiff filed the instant Motion on September 13, 2019, more than fifteen years later, he was nearly a decade too late.

Plaintiff's only argument to the contrary is a bare assertion that "[t]he 6-year toll did not commence at the conclusion of the criminal proceedings[, but rather] commenced on April 8, 2016 when [Plaintiff] registered his copyright with the U.S. Copyright office." (Pl.'s Reply 5–6.) The argument is without merit. First, ownership of a copyright is "distinct from ownership of any material object in which the work is embodied." 17 U.S.C. § 202. Accordingly, it is impossible for a copyright to create new property rights in the seized videotapes. Second, Plaintiff acknowledges that he held identical rights in the videotapes at the time his judgment was entered, (Pl.'s Reply 6 (claiming Plaintiff "never 'lost' any rights to his motion-pictures"). There is thus no reason why the statute of limitations should not have run during that period. And third, Plaintiff provides no legal authority for the proposition that later changes in the ownership of an object may affect the statute of limitations for a Rule 41(g) motion—and certainly no authority that undermines clear Second Circuit precedent establishing that the statute of limitations begins to run with the entry of judgment. *See Bertin*, 478 F.3d at 494.

Accordingly, as Plaintiff's Motion is nearly a decade late, it is time-barred. *Id.*

2. Preclusion

Plaintiff's Motion is also barred by res judicata. As discussed above, Plaintiff raised the same claim when he made a Motion for Return of Property during the pendency of his sentencing appeal in September 2008. *Azzara I*, 2008 WL 4702740, at *1. In an opinion and order dated October 23, 2008, Judge McMahon denied a substantially identical request, explaining that Plaintiff "unlawfully used the video tapes as part of his scheme in the instant case to extort money from his victims," and that "[n]otwithstanding [Plantiff's] fanciful argument that copyright law entitles him to possession of the tapes, he has no right to them because they are not supposed to exist." *Id.* at *2. That prior decision, which directly addressed the same request (and denied the same relief) presented here, amounts an adjudication on the merits, among the same parties, and with respect to same claims. Accordingly, res judicata applies. *See Monahan v. NY City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).[3]

---

[3] In general, "Rule 41(g) actions filed after the close of the criminal proceedings are treated as civil actions." *Bertin v. United States*, 478 F.3d 489, 493 (2d Cir. 2007); *see also United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) ("Rule 41(g) motions are civil in character.") Accordingly, the Court treats the instant Motion as a "new," civil action distinct from Plaintiff's long-concluded criminal proceedings.

However, as Rule 41(g) motions are brought pursuant to the Federal Rules of Criminal Procedure, it is possible to consider the instant Motion as part of Plaintiff's criminal proceedings. If so, the appropriate preclusion doctrine might be the "law of the case" doctrine rather than res judicata.

"While related to the principles of res judicata, law of the case doctrine is an analytically distinct concept. Significantly, the preclusive effects under the law of the case doctrine are narrower than under res judicata. *Tomasino v. Estee Lauder Companies, Inc.*, No. 13-CV-4692, 2015 WL 1470177, at *2 (E.D.N.Y. Mar. 31, 2015). Thus, "the law of the case doctrine applies only to the specific issues the court decided;" while "res judicata bars not only the specific legal claim decided in an earlier action, but all claims that arise from the same nucleus of operative fact." *Id.* "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *See Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (explaining that courts should "be loathe to [revisit earlier decisions] in the absence of extraordinary circumstances" (citation and quotation marks omitted)); *see also Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 288 (2d Cir. 2011) (noting that "there is a

7

Again, Plaintiff's only argument to the contrary is that this Motion addresses a "new set of facts" and "new issues of law" in light of the purported re-registration of his copyright. This argument is without merit. First, as the Court explained above, any claim of copyright is irrelevant to ownership of the physical videotapes. *See* 17 U.S.C. § 202 (explaining that ownership of a copyright is "distinct from ownership of any material object in which the work is embodied"). Second, by Plaintiff's own account, he possessed identical copyright rights at the time the court ruled against him in *Azzara I*. (*See* Pl.'s Reply 6 "[Plaintiff] asserts that he never 'lost' any rights to his motion -pictures.") Accordingly, by Plaintiff's own account, the claims, parties and facts addressed by the court in *Azzara I* are identical to those presented here.

### 3. Merits

The Motion also fails on the merits. To prevail, Plaintiff must establish, inter alia, that "he is entitled to lawful possession of the seized property." *Ferreira*, 354 F. Supp. 2d at 409. Plaintiff cannot do so. On the contrary, Plaintiff was in fact "instructed to destroy" all the relevant videotapes by a Florida state court. *Hubbard R&R* 2. Therefore, as Judge McMahon explained in *Azzara I*, Plaintiff has no right to the videos "because they are not supposed to exist." 2008 WL 4702740, at *2.

---

strong presumption against amendment of prior orders" (citation omitted)); *Bellezza v. Holland*, No. 09–CV–8434, 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011) (explaining that reconsideration is appropriate only where there are "cogent or compelling reasons not to [follow the earlier decision], such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (citation and quotation marks omitted)).

Here, the distinctions between the two doctrines are immaterial. As discussed above, *Azzara I* not only discussed the factual underpinnings of Plaintiff's claim for the videotapes; it addressed and rejected the very same claim of right (under the very same legal authority) that Plaintiff now asserts. Accordingly, insofar as the instant Motion is considered a part of Plaintiff's criminal case, the law of the case precludes Plaintiff from relitigating the same issue.

Relatedly, a convicted defendant cannot succeed in a 41(g) motion where the items he seeks are either "contraband *per se*" or "derivative contraband." *Awan v. United States*, No. 12-CV-3844, 2014 WL 1343129, at *3 (E.D.N.Y. Mar. 31, 2014); *see also United States v. Farrell*, 606 F.2d 1341, 1344 (D.C. Cir. 1979) ("Derivative contraband are articles which are not inherently illegal, but are used in an unlawful manner."). The latter category includes items "that become forfeitable because of their relationship with a criminal act." *Id.* (citation omitted). The instant videotapes, which Plaintiff used repeatedly to harass and torment his victims, *see Azzara I*, 2008 WL 4702740, at *2 ("[Plaintiff] unlawfully used the video tapes as part of his scheme in the instant case to extort money from his victims.), fall squarely into the latter category.

Moreover, were Plaintiff to regain possession of any such videotapes, there is no reason to believe Plaintiff would not continue to use them for the same destructive and unlawful purposes for which he used them in the past. This too provides sufficient reason to deny Plaintiff's Motion. *See United States v. Sabatino*, No. 07-2460-cr, 2009 WL 248009, at *1 (2d Cir. Feb. 3, 2009) (explaining that the Government was entitled to retain possession of seized photographs because "in [the defendant's] hands they pose a credible threat to the safety of others"); *see also Lavin v. United States*, 299 F.3d 123, 127–28 (2d Cir. 2002) (explaining that "the Government may retain the property if it has a legitimate reason for doing so").

Accordingly, even were the Court to consider the merits of Plaintiff's request, the Motion would be denied.

### III. Conclusion

For the reasons set forth above, Plaintiff's Motion is denied.

The Clerk of Court is respectfully requested to mail a copy of this Order to Plaintiff, terminate the pending Motion, (Dkt. No. 1), and close this case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:  February 13, 2020
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE